UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

OSAZEE NATHANIEL OBOH,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

No. 2:23-cv-164

Judge Greer

## RESPONSE IN OPPOSITION TO § 2255 MOTION

The United States opposes Osazee Oboh's 28 U.S.C. § 2255 motion because he has not

proven any basis upon which relief may be granted.

## FACTUAL AND PROCEDURAL HISTORY[1]

Oboh conspired with others to commit bank fraud, money laundering, and aggravated

identity theft. (Doc. 238, Plea Agreement at ¶ 4.) He and his conspirators unlawfully obtained

the personal identifying information of actual individuals, used that identifying information to

fraudulently open bank accounts and credit cards, funded those accounts with fraud proceeds,

then deployed a network of "runners" to withdraw cash from those accounts. (*Id*.) Oboh acted

as a runner, recruited others to do so, and also participated in the fraudulent creation of consumer

bank accounts. (*Id*.) For example, in recorded phone calls with a victim bank, Oboh pretended

to be two separate account holders—real individuals who had not actually opened the accounts in

question—and readily provided the identification information for those real individuals. (*Id*.)

A federal grand jury charged Oboh and others for their roles in the conspiracy, alleging

that their fraudulent transactions at two banks exceeded $3.7 million. (Doc. 29, Indictment at 5.)

Aided by his retained counsel, Oboh negotiated a plea agreement under which he would plead

---

[1] All record citations refer to the underlying criminal case, No. 2:20-cr-62-06.

guilty to a single count of the indictment (with a five-year statutory maximum penalty), forfeit his interest in the cash seized, be subject to a personal money judgment as to the "proceeds [he] personally obtained as a result of the offense," and, with limited exceptions, waive his right to file an appeal or seek collateral review. (*E.g.*, Doc. 238, Plea Agreement at ¶¶ 1, 6, 9, 12.) The United States, in turn, would dismiss the remaining charges against Oboh (which carried far higher statutory maximum penalties) and would not seek to have his sentencing guideline range based upon any loss amount in excess of $150,000. (*Id*. at ¶¶ 2, 6(d); *see also* Doc. 348, Sealed Presentence Report at ¶ 66.) As part of his plea agreement, Oboh also acknowledged that "pleading guilty may have consequences with respect to [his] immigration status," that "removal may be presumptively mandatory" based on the offense to which he was pleading guilty, that "no one . . . can predict to a certainty the effect of . . . conviction on [his] immigration status," and that Oboh "want[ed] to plead guilty regardless of any immigration consequences . . . , even if the consequence is automatic removal from the United States." (Doc. 238, Plea Agreement at ¶ 13.)

Oboh subsequently pleaded guilty pursuant to the written agreement. (Doc. 288, Report & Recommendation; Doc. 298, Order.) Before sentencing, the probation officer calculated the advisory guideline range as 24 to 30 months' imprisonment, based on a loss amount between $95,000 and $150,000. (Doc. 348, Sealed Presentence Report at ¶¶ 29, 64.) Oboh, through his counsel, objected to those calculations—arguing that the loss amount was between $40,000 and $95,000—and sought a non-custodial sentence of four months on home confinement, six months on probation, and three years on supervised release.[2] (Doc. 394, Sealed Sentencing Memorandum at 2, 4-5.) The United States initially sought a within-guidelines sentence, then

---

[2] Oboh asserts—mistakenly—that his counsel requested a combination of "incarceration and home detention . . . totaling 12 months." (Doc. 474, § 2255 Motion at 3.)

2

filed a motion for a downward departure from the guidelines range.  (Doc. 390, Sentencing Memorandum at 1; Doc. 396, Sealed Motion for Downward Departure.)  The parties also agreed that Oboh would be required to pay $40,000 in restitution.  (*See* Doc. 398, Supplement.)

Instead of seeking to hold Oboh and his co-defendants jointly and severally liable for the full amount of losses, which exceeded $2.4 million, the United States had elected to apportion restitution, seeking restitution from each defendant equal to the lowest figure in the loss range for which that defendant was deemed personally responsible.  (*See* Doc. 348, Sealed Presentence Report at ¶¶ 84-85.)  Oboh's counsel contacted the undersigned attorney before sentencing and urged the United States to acquiesce to a loss amount between $40,000 and $95,000, rather than the higher amount in the presentence report, in exchange for Oboh not seeking a lesser amount; the undersigned attorney agreed.  (*E.g.*, Doc. 388, Notice of No Objections ("the United States understands that [Oboh] will . . . object[] to the loss amount.  The United States will not oppose that objection . . . . [A] agreed, conservative estimate of loss will be . . . between $40,000 and $95,000."); Doc. 390, Sentencing Memorandum at 2 ("The parties have resolved the loss amount issue with an anticipated agreement that the loss will be between $40,000 and $95,000.").)  In the end, the Court accepted the parties' agreement and ruled that the "proper loss amount" for Oboh was more than $40,000, but less than $95,000.  (Doc. 402, Sealed Statement of Reasons at 1.)

The Court thus recalculated the applicable guideline range as 18 to 24 months, based on a total offense level of 15 and criminal history category of I.  (Doc. 402, Sealed Statement of Reasons at 1-2.)  The Court then granted the government's motion for a downward departure and sentenced Oboh to 12 months and 1 day in prison.[3]  (Doc. 401, Judgment.)  Oboh, through

---

[3] Although no sentencing transcript has been prepared, the undersigned attorney believes that Oboh was sentenced to 12 months and 1 day in prison—rather than 12 months—so he could reduce the amount of time he would actually spend in custody.  Any defendant sentenced to

counsel, asked the Court to reconsider its sentence and allow him to serve part or all of his custodial term on home confinement. (Doc. 408, Sealed Motion.) Among other reasons, he asserted that he "would likely face mandatory deportation" with any custodial sentence of one year or more. (Doc. 412, Supplement.) The Court denied the motion for reconsideration, explaining that it lacked authority to grant the requested relief. (Doc. 416, Order at 1.) After expressing sympathy for "Oboh's concerns about . . . his possible deportation," the Court noted that such concerns could—or should—have been raised during the sentencing hearing. (*Id*. at 2.) Consistent with the appeal-waiver in his plea agreement, Oboh did not appeal.

Oboh filed a timely *pro se* 28 U.S.C. § 2255 motion, and his counsel filed a motion for a sentence reduction under Guidelines Amendment 821 and 18 U.S.C. § 3582(c)(2). (Doc. 472, Sealed Motion; Doc. 474, § 2255 Motion.) The Court recently granted the § 3582(c)(2) motion, reducing Oboh's sentence to 8 months in prison, effective February 1, 2024. (Doc. 483, Order; Doc. 484, Sealed Statement of Reasons.)

## STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief, a petitioner must establish (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). He "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect

---

"a term of imprisonment of *more* than 1 year" may earn up to 54 days of credit for "exemplary compliance with institutional disciplinary regulations," colloquially known as good-time credit. 18 U.S.C. § 3624(b) (emphasis added).

4

in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Moreover, a petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, he must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Second, petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Because a petitioner "must satisfy *both* prongs [of *Strickland* to obtain relief], the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (*en banc*) (emphasis in original); *accord Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Oboh alleges that counsel was constitutionally ineffective in several respects. (Doc. 474, § 2255 Motion.) But he has not satisfied *Strickland*'s two-part test with respect to any claim.

1.  <u>Oboh has not established that counsel was ineffective with plea negotiations.</u>
    (Oboh's Claim 3.)

Oboh faults counsel for not negotiating a more favorable plea agreement on his behalf. (Doc. 474, § 2255 Motion at 3.) He notes that co-defendant Efosa Imasuen pleaded guilty to a conspiracy to commit money laundering alone (*see* Doc. 270, Imasuen Plea Agreement), rather than the conspiracy to commit bank fraud, money laundering, and aggravated identity theft to which Oboh pleaded guilty (Doc. 238, Plea Agreement). Oboh speculates that, had counsel asked for a similar plea agreement here, the United States would have acquiesced. But Oboh and Imasuen are not identically situated, as their respective plea agreements make clear. Imasuen was a runner who withdrew cash from the fraudulently created accounts, and the "reasonably foreseeable loss attributable to [him was] less than $6,500." (Doc. 270, Imasuen Plea Agreement at ¶ 4.) Oboh, by contrast, not only acted as a runner, but also recruited others to do so and helped create some of the fraudulent accounts. (Doc. 238, Plea Agreement at ¶ 4; *see also* Doc. 390, Sentencing Memorandum at 4 (describing Oboh's role as "more substantial than other individuals charged in the indictment"); *id*. at 6 (noting that the United States could reasonably have sought an aggravating role enhancement).) And the Court ruled that the proper loss amount for Oboh was no less than $40,000. (Doc. 402, Sealed Statement of Reasons at 1.)

Oboh also seems to fault counsel for not arguing that the offense to which he pleaded guilty was duplicitous—or seeking a different plea agreement alleging only one object for the conspiracy on that basis. (Doc. 474, § 2255 Motion at 3.) But "a single count of conspiracy to commit several crimes is not duplicitous, because . . . [t]he conspiracy is the crime. . . . [and]

violates but a single statute." *United States v. Boyd*, 640 F.3d 657, 666 (6th Cir. 2011) (quoting, in part, *Braverman v. United States*, 317 U.S. 49, 54 (1942) (internal quotation marks omitted).

The United States is not required to accept the terms proffered by any defendant, and defendants have "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). So, Oboh cannot possibly establish that he was entitled to a different plea agreement or that counsel rendered deficient performance for not securing such an agreement for him.

2. <u>Oboh has not established that counsel was ineffective with respect to his guilty plea.</u> (Oboh's Claim 1.)

Oboh claims that he pleaded guilty because counsel advised him that it would allow him to "get the most favorable deal" and misadvised him that it would "solidify the chances" of obtaining a sentence of probation alone; elsewhere, Oboh claims that counsel "reassured" him and "insisted [he] would not be incarcerated or deported" if he pleaded guilty. (Doc. 474, § 2255 Motion at 1, 3.) Yet Oboh also seems to acknowledge that counsel did not guarantee a particular sentence: "we all went in to sentencing fully *hoping* that [Oboh would] get sentenced to probation." (*Id*. at 3-4 (emphasis added).)

Even if counsel had misadvised Oboh about his likely sentence, Oboh cannot establish any prejudice, because the magistrate judge necessarily ensured, during the plea colloquy, that Oboh was correctly advised of the applicable penalties. (Doc. 288, Report & Recommendation.) Specifically, the magistrate judge determined that Oboh was "fully capable and competent to enter an informed plea," that his plea was "made knowingly and with full understanding of each of the rights waived," that his plea was "made voluntarily and free from any force, threats, or promises, apart from the promises in the plea agreement," that the plea had a "sufficient basis in fact," and that Oboh "underst[ood] the nature of the charge and penalties provided by law." (*Id*.

7

at 1.)  As required by Fed. R. Crim. P. 11, the magistrate judge also necessarily "inform[ed] [Oboh] of, and determine[d] that [he] underst[ood],"

- any maximum possible penalty, including imprisonment, fine, and term of supervised release;

- the court's authority to order restitution;

- in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); . . . and

- that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission from the United States in the future.

Fed. R. Crim. P. 11(b)(1)(H), (K), (M), (O).

"The decision to plead guilty – first, last, and always – rests with the defendant," *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003), and the plea colloquy ensured that Oboh knew the rights he was waiving by pleading guilty, the statutorily authorized penalties, and the risk of adverse immigration consequences, among other things.  Oboh pleaded guilty because he was, in fact, guilty—and he has not proven any constitutional ineffectiveness with regard to his plea.

3.     <u>Oboh has not established that counsel was ineffective with respect to restitution.</u>
        (Oboh's Claim 2.)

Oboh next claims that counsel initially "told [him] to pay a restitution o[f] $90,000," later directed him to pay $40,000, and ignored or rebuffed Oboh's requests to seek a restitution or loss amount no greater than $10,000.  (Doc. 474, § 2255 Motion at 2.)  Oboh also accuses counsel of employing "coercive tactics" and saying he "needed" to pay most if not all of that amount before sentencing "to ensure that [he would] get no jail time."  (*Id.*)

Full payment of restitution before sentencing demonstrates a higher level of acceptance of responsibility than nonpayment of restitution (*e.g.*, Doc. 390, Sentencing Memorandum at 10;

Doc. 398, Supplement), so it would be unsurprising for defense counsel to encourage a defendant to pay as much restitution as possible before sentencing, so as to facilitate counsel's arguments for leniency and/or a noncustodial sentence. Purporting to "guarantee" a non-custodial sentence, however, if true, would likely be constitutionally deficient performance by counsel, given the Court's sole authority to impose sentence. But Oboh cannot show that he was prejudiced, because he was necessarily and unequivocally told during the plea colloquy, and agreed that he understood, that the Court alone would determine his sentence.

As for Oboh's claim that counsel told him that "the prosecutor said . . . he wouldn't ask for jail time or deportation" if Oboh didn't dispute the $40,000 loss amount or restitution (Doc. 474, § 2255 Motion at 2), the undersigned attorney has no way to confirm or refute what Oboh's counsel may have said to Oboh. But the undersigned attorney can assure the Court that he never made the promises Oboh now attributes to him: he never agreed not to ask for a term of imprisonment, and he never attempted to predict the immigration consequences of Oboh's conviction or sentence. (*E.g.*, Doc. 390, Sentencing Memorandum at 8 (noting that Oboh's "immigration status and his ultimate ability to remain in the United States lawfully remain[ed] unclear").)

Oboh is, however, likely correct that defense counsel initially discussed a restitution amount of at least $90,000 with him. In November 2022, before the presentence report had been prepared, Oboh's counsel contacted the undersigned attorney for information about the possible restitution amount; the undersigned attorney replied that Oboh's loss amount was expected to be $95,000 to $150,000, and that the United States would seek restitution at the bottom of that range (*i.e.*, $95,000). (*See* Email Correspondence, attached.) As discussed above, Oboh's counsel

9

later persuaded the United States to acquiesce to a lesser loss amount—$40,000 to $95,000—and a restitution amount at the bottom of that range.

Oboh now claims that he "wasn't comfortable" with the $40,000 restitution amount and "was oppose[d]" to it (Doc. 474, § 2255 Motion at 2), but he has not identified any legal basis upon which his attorney could have sought a lesser amount. After all, the Mandatory Victims Restitution Act, codified at 18 U.S.C. §§ 3663A and 3664, requires that restitution be ordered "in the full amount of each victim's losses," and the losses in this case exceeded $2.4 million. (Doc. 348, Sealed Presentence Report at ¶ 84.) As for the amount of liability that could reasonably be apportioned to Oboh "to reflect the level of [his] contribution to the victim[s'] loss," 18 U.S.C. § 3664(h), Oboh had previously agreed to forfeit over $340,000 cash seized from him and others (Doc. 296-1, Preliminary Agreed Order of Forfeiture), which suggests that the scope of his involvement was greater than $10,000.

To the extent Oboh suggests that counsel's inaction resulted in a miscalculation of his loss amount (Doc 474, § 2255 Motion at 2-3), he has not identified any factual basis to disturb the Court's loss determination. His reliance on *Bryant v. United States*, No. 2:17-cr-146, 2023 WL 4306041 (S.D. Ohio June 30, 2023), is misplaced and unavailing. In that healthcare fraud case, the United States conceded on collateral review that defense "counsel should have presented evidence that the loss amount was based on the amount Petitioners billed to Medicaid rather than the amount they expected to receive." 2023 WL 4306041, at *10. Additionally, the trial record in that case would have allowed defense counsel to "identify with specificity what a reduced loss amount would be" instead of simply "attempting to poke holes in the Government's statistical techniques." *Id*. at *11. The district court thus found a "reasonable probability" that, had defense counsel made such arguments, "the total loss amount would have been revised

10

downward." *Id*. at * 12.  Here, by contrast, Oboh has identified no legitimate argument that his counsel failed to make; he asserts only that a "loss amount or fine higher than $10,000 wouldn't be the best for [him]."  (Doc. 474, § 2255 Motion at 2.)

Oboh also conveniently ignores the fact that, under the terms of his plea agreement, the United States could have sought a judicial finding that he was responsible for losses up to $150,000.  (Doc. 238, Plea Agreement at ¶ 6(d).)  Counsel's negotiation limited his loss amount to the range between $40,000 and $95,000, while several of Oboh's co-defendants were ordered to pay $95,000 in restitution.  (*E.g.*, Doc. 219, Okolongwu Judgment; Doc. 335, Akhigbe Judgment.)  In the end, Oboh has not established any deficient performance by counsel with respect to the $40,000 restitution order, nor has he shown that he was prejudiced as a result.

4.   <u>Oboh has not established that counsel was ineffective for not informing the Court, at sentencing, that any term of imprisonment in excess of one year in prison would result in his deportation.</u>

Finally, Oboh claims that counsel was constitutionally ineffective for not advising the Court of his "severe risk of deportation" if he were to receive a sentence equal to or exceeding one year in prison.  (Doc. 474, § 2255 Motion at 3-4.)  He seems to argue that his "risk of deportation . . . is directly affected by the term of his sentence—with the one-year mark serving as a bright line between possible deportation and certain deportation," and that counsel thus rendered deficient performance by not so informing the Court at or before sentencing.  *Shu Feng Xia v. United States*, Nos. 14-cv-10029, 12-cr-934-9, 2015 WL 4486233, at *5 (S.D.N.Y. July 20, 2015); *but see also Roy v. United States*, 347 F. Supp. 3d 230, 41-42 (S.D.N.Y. 2018) (noting that the "length of [a] petitioner's sentence dictates whether he is mandatorily deportable only" in certain categories of cases, and "there is still the possibility that he would be deportable for having committed crimes of moral turpitude within five years of his entry").

11

Assuming *arguendo* that Oboh's counsel rendered deficient performance by not advising the Court that any sentence equal to or greater than one year in prison would subject Oboh to adverse immigration consequences, Oboh cannot establish any prejudice today, because the Court recently reduced his sentence to eight months in prison. (Doc. 483, Order.) That new sentence is "determinative for purposes of the aggravated felony statute." *Shu Feng Xia*, 2015 WL 4486233, at *9 n.13.

## CONCLUSION

For the foregoing reasons, Oboh's § 2255 motion should be denied.

Respectfully submitted,

Francis M. Hamilton III
United States Attorney

By:  *s/ Mac D. Heavener, III*
Mac D. Heavener, III
Fla. Bar No. 0896748
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee 37743
(423) 639-6759

## CERTIFICATE OF SERVICE

I certify that on January 11, 2024, this response was filed electronically and a true copy was sent to petitioner by regular United States mail, postage prepaid, addressed as follows:

Osazee Oboh
No. 08142-509
F.C.I. Butner Low
P.O. Box 999
Butner, NC  27509

*s/ Mac D. Heavener, III*
Mac D. Heavener, III
Assistant United States Attorney

12